And the next case is Shipley v. St. Paul Fire & Marine Insurance. And it's Ms. Lilly. Ma'am, when you're ready, would you please proceed? May I please report, counsel? My name is Lisa Lilly. I represent the Dependents... There's one more judge. It's not going to be here today. There's three of us. There's two of us out here on the record, and a third judge will be assigned. And the third judge is given the oral arguments, just like all of you have access to it on the Internet, and we have access to it, and the briefs. And we'll consult with the third judge assigned to the case before making any decision. And thank you for catching that. No problem. Starting here. My name is Lisa Lilly. I represent the Dependents, Appellants, St. Paul, Metropolitan Property, and Cattle Catering Agency. Your Honors, class certification should be reversed here for all the same reasons it was reversed in Venus v. St. Paul. Every argument Dr. Shipley makes to support prominence was made by the counsel on behalf of Dr. Venus v. St. Paul. Every report calls Dr. Venus, like Dr. Shipley, a chiropractor who treated patients who was a claimant under medical payments or med pay policy. The state school policy, just like the policy here, didn't contain a promise to pay 100% of all bill charges. It had a promise to pay reasonable or usual and customary charges for necessary treatment. And like Dr. Venus, Dr. Shipley challenges the payment of his bills at less than the full amount. This court found in Venus that individualized issues regarding whether all the class senator's bills were reasonable or not would predominate when determining whether there was actually a breach of this obligation to pay reasonable bills. The very same issues were before the trial court and this court in the two cases. In fact, in the Venus class certification order, the circuit court explains the issues as framed by the plaintiff there. This is at A16 in our appendix. The plaintiff argues that there are two overriding issues common to class members. The first overriding issue concerns the construction of the Safeco Insurance Company medical payments coverage obligation. The second overriding issue is whether the engenic UCR computer bill review employed by Safeco's vendors complies with the contract requirements. The circuit court in Shipley, in this case, at A3 in the class certification order, explains the issues as framed by the plaintiff. The plaintiff argues that there are two overriding issues common to class. The first overriding issue concerns the construction of the MetLife medical payments coverage obligation. The second overriding issue is whether the engenic UCR computer bill review employed by defendant's vendors complies with the contract requirements. Looking at these two overriding issues, this court reversed class certification as an abuse of discretion, finding that whether each bill was usually customary for reasonable and necessary services. And this was based on a long-established Illinois precedent. The court cited Victory Memorial v. Rice, a 1986 case, where a medical provider sued a patient seeking recovery and payment of medical bills. And the court found you couldn't just presume that those bills were reasonable and therefore had to be paid, but that the reasonableness had to be assessed. And the court found that even if the computer system in Bemis were shown to be flawed, that still wouldn't answer whether there was a breach of this obligation to pay reasonable bills. Now, Dr. Shibley has argued that somehow this case is different because he says the contract language here of reasonableness was ambiguous. And Dr. Shibley has what he says is how the contract should be construed and what the obligation should be. And what Dr. Shibley argues is the insurer has to pay the full bill amount as long as it's a provider's usual charge of absent fraud. Well, this is not new. This is the argument Dr. Bemis advanced. He has an entire section of his brief on it at age 50, where his subheading reads that this case primarily presents an issue of construing safe post ambiguous coverage obligation, an issue readily decided on a class basis. And on the next page, he says his contract claim presents a clear common classified issue as to how to construe safe post coverage obligation to pay all reasonable medical expenses. Looking at that argument, this court rejected it and said, well, in Illinois, there's no presumption on a bill charged to its usual and customary charge for reasonable and necessary medical services. So for the same reasons that individualized issues of reasonableness predominated in Bemis, they will predominate here. And there's an additional reason that class search should be reversed. And this court also addressed it in Bemis, which is the question of whether the provider class members have valid assignments from their patients, because this class includes patients and providers. And Dr. Bemis, like Dr. Shipley, said, well, we don't have to prove an assignment. That can be decided later down the road. And this court said, no, Dr. Bemis does need to prove he has a contract claim. Like every other plaintiff in every other contract case, Dr. Bemis would have to show he had a contract with the insurer. And that means, since he's not an insurer, he's a provider, he has to show an assignment. Now, Dr. Bemis says, or Dr. Shipley says, well, I have other arguments Dr. Bemis didn't have. I can show I really have a valid assignment here. And we've argued Dr. Shipley is not an adequate class representative because his assignment isn't valid. But even if it were, his arguments in the record here show exactly why the assignment issue is so individualized. First of all, Dr. Shipley has a document called a doctor's lien. It doesn't say anything about being an assignment. The only language it has is about a medical, an authorization to directly pay the provider for medical bills. And this court noted, even in Illinois, let alone all the other states in the class, there's a split. Does a direct payment authorization alone create an assignment or not? So that's just for Dr. Shipley's document. And he put nothing in the record regarding other class members. So we don't know what types of forms other class members used. Also, Dr. Shipley argues, well, intent is what really matters. You don't have to look at the language of the assignments. Look at the intent. And here I am, Dr. Shipley. I have vigorously pursued my rights against metropolitan property and casualty. I haven't pursued the patient. Therefore, it's clear I have an assignment. I agree. Dr. Shipley has vigorously pursued his rights against my client. But what does that tell us about any other provider? It doesn't tell us anything. And also, doesn't the patient's intent matter? Doesn't it matter what Mr. Halford intended when he signed this doctor's link? Or what every other provider class member's patient intended? Dr. Shipley has another argument. He says, well, that doesn't work. There's another case where I sued Medicaid. A different type of reduction, a PPO reduction. And he says, there, there were arguments on a motion to dismiss. And he asserts that McKinsey's counsel conceded that there was an assignment in that case. Again, we dispute whether the arguments of counsel amount to estoppel or anything establishing there's an assignment. But even if it did, again, that obviously doesn't help with other class members. So just as with a reasonable issue, the issue of whether each provider had an assignment is going to be an individualized, both legal and fact question. Finally, Dr. Shipley says, we'll just kick this down the road. You can use some kind of claims procedure to decide this. You have your trial and class, and if there's liability, we'll just have an administrative procedure to decide, does the patient have a claim, does the provider have a claim? There's two problems with this. One, this court in Bemis said you have to actually prove the assignment to have a breach of contract claim. But also, Dr. Shipley's never explained what would this procedure look like. Well, we have a little bit of a clue, because in that PPO case where he sued McKinsey, Dr. Shipley actually couldn't find his assignment signed by Mr. Halford at that point. So with his first amended complaint, he filed instead a declaration, and it's at C2144-45 in the record. And in paragraph 3, he said, to date I have searched and have been unable to locate the copy of the assignment slash lien signed by Dr. Halford with respect to his treatment. And he goes on to say, I'm looking for it. If I find it, I'll submit it. He then says he's attaching a blank assignment form, although that wasn't in the record there. In paragraph 6, he says, I know Glenn Halford signed the assignment based upon, one, the procedures in place at my office at the time I treated Glenn Halford. So Dr. Shipley, when he filed that complaint, he didn't even remember specifically that Mr. Halford signed it. No big surprise. I'm sure Dr. Shipley has lots and lots of patients. But this gives a little insight to what that administrative procedure would look like. What happens if a doctor submits and says, you know, I don't have a signed form, but I always get one. And what if the patient submits a claim and says, I didn't sign an assignment, or maybe he says, I thought that document was a lien against my personal injury case. I didn't intend to assign my own personal medical records. There's just no way these things could be decided on a class basis. The other reason individual issues would predominate here, even for an Illinois-only class, is the issue of whether each class member had damages or injury. The parties obviously disagree about the effect of current versus all-state amend a case where the appellate court looked at standing an injury on a motion to dismiss. We disagree how it applies at the class stage. But what's clear is PURRT didn't say that Medicaid cases are special and you don't need any kind of injury or damages. Also, Dr. Shipley has said, well, all-state made all the arguments there, then that PNC makes here. And actually, that's not so. What all-state argued in PURRT was that Mr. PURRT didn't pay out of pocket, so he hadn't suffered injury. And all-state said, we have a practice. If our insureds are pursued for collection by a provider for an unpaid balance, we will defend and identify them. Well, the appellate court said, and therefore Mr. PURRT can't ever be insured. The appellate court said, no, you know what, that's not good enough. One, we have some questions about whether you really defend and identify everyone. But two, even while you're doing that and you're defending Mr. PURRT, he could suffer some injury. There could be harm to the doctor-patient relationship. His credit rating could be harmed. There are ways he could be harmed. So let's let the case go forward and see what those are. Those are the types of things that we need to be looked at for each class member. Let's take a patient like Mr. Halford. Let's say there was no assignment and a patient just like Mr. Halford wanted to pursue a breach of contract claim. Well, we know it's undisputed he finished his treatment before the bills were even submitted to MAT-PNC. He never knew there was a dispute over payment. Dr. Shipley testified he didn't pursue Mr. Halford. He didn't call him up. He didn't do his credit record. He didn't sue him. Mr. Halford got all his treatment, and he wasn't damaged at all by this. How would he have a breach of contract? That is another major issue that needs to be made clear. Also, going back to Dr. Shipley's testimony again on the reasonable issue, Dr. Shipley actually agrees with this court and disagrees with his counsel about whether he should just be paid all the time his usual charges. I asked him, are you seeking to recover for any, are there any bills that Metropolitan did not pay in full for any reason? Here was his answer. Not for any reason. If I feel it's reasonable and necessary and I can justify that, I think then it should be reimbursed. That's at C-1014. He also said he couldn't really say about other providers' bills. I asked, do you think it is not fair any time an insurance company reduces a doctor's or chiropractor's bill? His answer was, well, that's totally speculation on my part because it depends on what they're doing. It depends on what they're doing. It depends, as the Port and Victory Memorial said, on the provider's costs, functions, and services. It depends on what other providers may carry our charge when you look at whether a bill is reasonable. Finally, class certification here should also be reimbursed because it was an abuse of discretion to certify a multi-state class. There are state-to-state differences in law here, as well as facts, that would predominate. Going back to this injury issue, in Colorado, the Labyrinth case, the Colorado Appellate Court found that in a bill under payment case like this one, if an insurer was never pursued for collection by a provider and the insurer sent a letter to the provider assuring and advising that it would indemnify and indefend the insured, that insured had no injury. That's different than what a court said, where it said, you know what, you could still have an injury even if you're being indefendent and indemnified. A court in Ohio found you do need to show some sort of collection activity, some sort of damage to the credit record. Plaintiffs have cited the Kakumanis case that went the other way in Florida. This is a significant material difference in state law. The assignment issue also is a significant material difference. There's this issue this court recognized about, does the authorization of pay create an assignment? Well, in Connecticut and Louisiana, it doesn't. If all those providers had was the same form Dr. Shipley had, no assignment, even if you were bound to have one here. And, of course, we don't know if they all have the same form. In South Carolina, if a patient remains personally liable to the health care providers for all the bills, despite language-assigning benefits, there's no assignment. That's another argument we've made for why Dr. Shipley doesn't have an assignment here. There is Illinois law supporting that as well, suggesting that if you still owe the provider, that's not really an assignment. It's a provider who can still collect from you. But regardless, even if we're wrong about Illinois law, that would be different than South Carolina law. The issue of the presumption of reasonableness can vary, does vary, from state to state, and how reasonableness is proven. Some states do say a bill is reasonable, although usually you can rebut that, just as this court found in Bemis, the defendant would be able to rebut any evidence of reasonableness. Some states require expert testimony on reasonableness. These differences are the very differences that led a court in Oklahoma to recently deny class certification in a case like this one, because it said predominance would be compromised by a multiplicity of contradictory state laws. Those are the same laws that apply here, so a multi-state class certification also was an abuse of discretion. But even without reaching those issues, this court here is looking at the same class cert order, same facts, even the same computer system, and the same obligation to pay that was contained in the state law policy. So for all the reasons that class cert is an abuse of discretion in Bemis, it's an abuse of discretion here, and we ask that this court reverse. Thank you. Mr. Brown? Good morning. May it please the Court. I am Mark Brown. I represent Dr. Shipley and the class of plaintiffs that Judge Stack certified, and Judge Stack's certification order should be affirmed, one, for all the reasons described in the briefs, and then for the reasons we'll discuss this morning. I hope to accomplish two things this morning. One, I hope to establish that Judge Stack properly exercised his discretion, essentially that he got it right on the substance by properly analyzing the class accident statute and applying it to the facts of this case. And second, where I suspect we'll spend most of our time, is in discussing the Bemis v. Safeco case. That case hadn't been handed down in the time of MetLife's opening brief, and so we consumed our page limit in our opposition brief addressing the arguments that were made in the opening brief, and so this is really our first opportunity to fully address Bemis. Before I jump forward to Bemis, if I can just give a brief overview of why we believe Judge Stack got it right on the substance. As we know from the Avery case, class certification orders are reviewed for an abuse of discretion only if the court clearly abused its discretion or applied impermissible legal criteria. Judge Stack did neither. He thoroughly analyzed the class action statute. The most pertinent section for this particular controversy is the predominance section in Section 802, which asks whether there are questions of fact or law common to the class which predominate over questions affecting only individual members. The short answer here is yes, because this is in essence a case of contract construction involving uniform contract language. The question is one of law, of how should the MetLife promise to pay reasonable medical expenses be interpreted. The answer to that question, whether ultimately resolved in favor of MetLife or the class, is one that's common to all class members. Either the court, presumably the trial court, if this court affirms, the trial court may accept MetLife's definition, which, by the way, it hasn't proposed in a definition as far as I know in this litigation, nor in the policy language itself. We know, however, from the discovery that how MetLife interpreted that promise, it interpreted reasonable expenses to be those which were consistent with the formula that we found at discovery. That formula is RVU times CF equals fee. Relative value unit times conversion factor equals fee. Now, hypothetically, the court may ultimately determine that that is the definition of reasonable, in which case MetLife would prevail and judgment would be entered and there would be race judicata against all members of the class. We don't think that would be the outcome because of the well-established body of law that insurance policies, when there is an ambiguity in the policy, are to be construed against the insurer as the drafter and in favor of maximum coverage. So virtually any other definition that might be adopted by the court other than RVU times CF equals fee, that will establish class-wide that there has been a breach of the promise to pay reasonable fees. Now, there's this question of whether the doctor's bills were reasonable as a common law principle as opposed to a contract construction principle, and I'll address that in a second. That really relates to the issue of damages, which is how this court described it in a case actually cited by MetLife, the Protestant Hospital Builders v. Getty case from 1981. I will return to that in a second, but essentially there is a single, common, predominating question, that of contract interpretation. Once that question is answered, the only remaining individual issues that are significant here would be damages, which do not present an obstacle to class certification. And I'll return to that if there's time, but otherwise I'd like to fast forward to Bemis v. Safeco. And we believe that Bemis v. Safeco is not controlling here for at least two separate reasons. One, Bemis really did not analyze the case from an insurance coverage perspective as we're proposing here. The way that Bemis court described the issue was as follows. Bemis argues that the predominant issue in this case is whether the computer database utilized by Safeco is inaccurate and whether the use of the database justifies the limitation of payment under the medical payments provision of the policy. I'm not suggesting that the computer program used by MetLife is inaccurate. It may very well have followed the RVU times CF equals fee formula. The question is whether application of that formula satisfies MetLife's obligation to pay reasonable expenses. If reasonable expenses is an ambiguous term, it should be construed against MetLife. So this court in Bemis simply did not analyze that large body of law regarding construing an ambiguous policy language against the drafter, and we would invite the court to do so in its opinion here. Judge Stack understood this. He described the issues as follows. Plaintiff argues that there are two overriding issues common to the class. The first overriding issue concerns the construction of the MetLife medical payments coverage obligation. That's exactly what I'm suggesting. The second overriding issue is whether the agenda CCR computer review employed by defendant's vendors complies with the contract requirements, which, of course, turns on the construction issue. This court simply didn't analyze it in that fashion as an insurance dispute. Second, with all due respect to the court, we believe that it misunderstood, and understandably so, misunderstood some rather confusing language in the Avery case and in the Smith case and created a heightened standard that those cases didn't intend. Here's what I mean by that. The Bemis court said, quote, because proof that the usual and customary charge for one class member's reasonable and necessary medical expenses went unpaid would not establish a right of recovery for any other class member. Common issues do not predominate. So the Bemis decision was based on the court finding that there would not be a right of recovery established by Dr. Bemis. This is a standard that's inconsistent with both the statutory language. The class action statute does not mention the term right of recovery. It talks about common issues predominating, and common issues predominating leaves open the possibility of there being individual issues. It's also inconsistent with the Illinois Supreme Court in the Steinberg v. Chicago Medical School case where the court And this, by the way, the Steinberg case was the first Supreme Court case addressing the statute after it was enacted. Steinberg said that no doubt there will be situations where there may be questions peculiar to certain members of the class. However, once there's a determination that there exists a question of fact or law common to the class and that this predominates the question affecting only individual members, the statute is satisfied. So that is not a right of recovery standard. That is a predominance standard. So how do you, and furthermore, even Smith, which is one of the cases relied on by the court in Bemis, says the test for predominance is not whether the common issues outnumber the individual ones, but whether common or individual issues will be the object of most of the efforts of the litigants and the court. Again, not a right of recovery standard. In Bemis, this court, in adopting the right of recovery standard, said, See Avery quoting Goetz versus Billings of Huffman Estates. And this is where it gets a little lengthy, but you have to peel back several layers of the onion, I think, in order to square this circle. How to reconcile the language in Avery that it's not changing law. Avery said we've not fashioned any changes to the legal rules governing class actions. And how to reconcile the right of recovery with predominance standard. Well, you have to read a series of quotes to see where the language in Smith and Avery originated. Smith says, Satisfaction of Section 2108's predominance requirement necessitates a showing of successful adjudication of the purported class representative's individual claims will establish a right of recovery in other members. That's Smith quoting Avery citing Goetz. Virtually the same thing that this court did in Bemis. But when you look at the Goetz case, to see where that originates, the Goetz quote is, Satisfaction of this predominance, this prerequisite, meaning predominance, necessitates a showing of successful adjudication of the purported class representative's individual claims will establish a right of recovery in other class members. C. Barton Chemical Company versus Hertz Corp. Which is a first district case from 1978. When you look at the Barton case, the Barton case says a key requirement, therefore, for allowing a class action in Illinois is whether successful adjudication of the purported class representative's individual claim will establish a right of recovery in any other class members. So Barton says that there's a key requirement, therefore. What's the therefore? Well, if you read the Barton case, that language is preceded immediately by a quote from the Illinois Supreme Court in Magro versus Continental Toyota. This is 67 Illinois 2nd, 157 from 1977. It was a tax case that preceded the class action statute. And Magro says, as the Supreme Court stated in Adams versus Jewell Companies, necessary prerequisites to maintenance of such action are the existence of common questions which dominate the controversy, not predominate, but dominate the controversy and pertain to each class member and an interest in a common result. So what you have is Avery citing a series of cases where they're quoting from an Illinois Supreme Court case that preceded the enactment of the class action statute and set forth a completely different standard than that in the statute and in Steinberg and other cases that have followed. That standard was a requirement of dominating, not predominating, and pertaining to each class member, which leaves open no room for individual issues. In this case, Magro, the court is referencing Adams versus Jewell, which is another Illinois Supreme Court case from 1976 where the court acknowledged all parties to these appeals agree that the guidelines for determination of the propriety of the class action have judicially developed and have not been legislatively determined. In other words, Adams is acknowledging that they're applying a common law standard. They're not the standard that was set a year later in the class action statute. And as the first district noted in Spirit versus State Farm, 65113-440, the new statute, this is new, 1978, the new statute does away with a large body of decisional law which views the communality of interest in stricter terms. So, in other words, what we have here is Avery and Smith announcing that they're not changing the law, describing the standard that's consistent with Steinberg in terms of where the focus of the parties will be, but recognizing that there will be individual issues, but then going on, unfortunately, to quote in dictum a previous standard that no longer applies. Where does that put us, though? I wrote Smith. I was reversed. I mean, there were two other judges, but I wrote it, and we quoted accurately in here. Is your fight with the Supreme Court or with us? Well... I mean, we get our guidance from the Supreme Court, and whether they... The same case I thought it was when it went up there, but it came back here, and from there on in, we follow Smith, and they seem to... I mean, a judgment in favor of the class members should decisively settle the entire controversy, and all that should remain is for the members of the class to file their proof of claim, and we in Bemis didn't think that was the case, and whether... I mean, do you know what I'm trying to say? I certainly do, Your Honor, and the actual quote that you just read from Smith, as I'll explain in a second, also relies on another quote that is misquoted. By the Supreme Court? Absolutely by the Supreme Court, but I think that maybe the Supreme Court should address this issue. In this case, they give them the perfect opportunity to do that, because I've spent a lot of time thinking about how to reconcile that language in Smith and Avery, and I come to the conclusion that it's simply inconsistent, but the part that's inconsistent or one half of the inconsistency is based on either misquotations or quotations from cases that preceded the statute, and I don't know whether the Supreme Court intended this inconsistency. I have to assume they did not, but we would invite a scholarly analysis of that issue that perhaps hasn't been requested of the Court previously. And if I may get to the quote that you just read in terms of what I'll call the second confusing statement in Smith, saying that where the predominance test is met, the judgment in favor of the class members should decisively settle the entire controversy and all that should remain is for the other members of the class to file proof of their claim. This is Smith quoting the Supreme Court of Texas from 2000 in Southwestern Refining Company v. Bernal, but if you read that case, it's actually misquoted in Smith because the actual quote begins, ideally a judgment in favor of the class members should decisively settle the entire controversy and all that should remain is for other members of the class to file proof of their claim. But that word ideally is incredibly significant there. The Texas Supreme Court was establishing an ideal, not a requirement. So, of course, if a right of recovery in all class members is established by the class representative, of course, that would be sufficient to demonstrate class certification is appropriate, but that's not to say that it would be necessary. I think the proper standard is in Steinberg, which was, of course, cited with approval by the Supreme Court in Avery and Smith. And to go a step further, even if this court disagrees that I'm properly interpreting Avery and Smith, even if you accept a higher standard of requirement of right of recovery in all class members, the facts of this case actually do satisfy even that heightened standard. And here's why. I think all courts agree that individualized damages do not present an obstacle to class certification. Certainly the 2nd District said that in the Cruz case from 2008. While we discern that if the common issues are proven in favor of plaintiffs, the trial court would face significant individual variations and damages. This should not defeat the determination that the commonality predominance prerequisite is satisfied. Individual variations and damages will not defeat class certification. And the issue that has been presented by MetLife here, whether as a matter of common law, the doctors submitted reasonable bills, not reasonable as defined in the contract, but reasonable as a matter of law, because I agree a patient isn't obligated to pay something that's more than what is reason as a matter of common law. But this court has already determined that that's a matter of damages, not a matter of liability. Here's why. In the Protestant Hospital Builders Club Inc. versus Getty case, which is cited by MetLife for the proposition that merely submitting an invoice doesn't demonstrate that the charges were reasonable. This court agreed with that proposition. Hard to dispute that proposition. But this court described that in terms of damages. The quote is, based upon the evidence before us, we hold that plaintiff has failed to discharge his burden of proof with respect to damages. Therefore, we affirm that part of the judgment, finding defendants liable, but we reverse and remand for a new trial as to damages only. So the mere fact that an invoice may not demonstrate that the charge is reasonable as a matter of common law creates an issue of damages for the court to review, not an issue of liability. The contract interpretation question about what MetLife meant when you promised to pay reasonable expenses, that is a contract interpretation question that can be determined as a matter of law for all class members. And therefore, individual issues of damages should not be an obstacle to it. Do you think it's two different issues, how you go about determining what's reasonable and the amount that's reasonable? I think that's right. And those are the two that run together. To me, you put those two together and say they come later in determining damages. But up front, you've got to make a determination of how you determine what's reasonable. And you two disagree on that. They do it by expert testimony, and you do it by the amount of the bill. I don't think we have to get to expert testimony if I'm right that the court construes the reasonableness limitation against the insurer. So, again, MetLife wins if reasonable means whatever the formula is. It's RVU times CF equals fee. But if we're right that that language is ambiguous, how could it not be? I mean, how can a policyholder know when they're purchasing that policy what's going to be paid and what isn't going to be paid? Now, if this would have been an easy problem for MetLife to solve, had they chosen to, they could have said in the policy, we define for purposes of this policy reasonable to mean RVU times CF equals fee. They didn't do that. And maybe they will going forward. I don't know. But as a matter of insurance law, that ambiguous language should be construed against them. And, by the way, I think the U.S. Supreme Court would agree in Solon versus Midwest Medical Records Association, they looked at the language of reasonable expenses in the statute, and the statute was ambiguous. Thank you. Thank you. Any rebuttal? The claim here is for breach of contract. And what Dr. Bingus and all the class members will need to show is that the policy obligation was not met. The policy obligation here is to pay reasonable medical bills. It's not to use a particular method for determining reasonableness. Now, medical providers might like that to be defined in the policy. Clinics might like that. But that isn't what's in the policy. And what they're coming here for is a breach of contract claim. They didn't come in and say, we need you to change your policy. We want to bring a deck action. We want you to order MetLife to change its policy. They came in and said, this policy obligation was breached. Now, Dr. Shipley says, well, it's an ambiguous policy obligation. That's the same argument that Dr. Bingus raised. And I don't believe that this court ignored it or didn't notice that or wasn't scholarly enough to deal with all the issues there. I mean, I believe the court looked at that question. And also, Bingus was not a new interpretation or a new decision. The law tells us, how do you figure out what's a reasonable bill? What is reasonable? That we look at other providers in the area, that we look at the providers' costs and functions and services. And plaintiffs said, well, it's different. That wasn't in the insurance coverage context. But Bingus was in the insurance coverage context. It was exactly the same issue as here. And the other cases were a myth. They were contract cases where providers were suing patients. They were tort cases where the courts had to decide what was a reasonable medical bill when someone was injured, like Mr. Halford was injured in an automobile insurance accident. The law is the law. Reasonableness doesn't suddenly become confusing and ambiguous because it's in an insurance policy versus in a contract with a hospital versus before the court when someone's seeking recovery from a tort visa or the tort visa's insurance carrier. Bingus relied, this court relied, on long-established law. These arguments about the formula and they're not really challenging the computer system or splitting hairs, it's the same computer system that was challenged in Bingus. Plaintiffs complained at least a dozen times in this case. It does challenge the computer system. And the formula that was used is the same one that the system used in Bingus. So there is really nothing different here that warrants distinguishing the case. And as to the arguments regarding Avery and Smith being incorrect when we decided, you know, I think as Your Honor has stated, that is what the Illinois Supreme Court has done. That is the standard the Illinois Supreme Court laid out, and it clarified that and emphasized certain things, but that was what the Illinois Supreme Court did. So it is, this court properly decided in Bingus and properly decided the case and a search should be reversed here. Thank you. Thanks to both of you for your arguments this morning. We'll take the matter under advisement. Consult with the other judges assigned and try to get you a decision as early as possible.